# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **ROBERT RAYMOND,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO.** |
| | : | **3:06-cv-1362 (VLB)** |
| **BOEHRINGER INGELHEIM** | : | |
| **PHARMACEUTICALS, INC.,** | : | |
| **Defendant.** | : | **August 21, 2008** |

## MEMORANDUM OF DECISION AND ORDER DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT  [DOC. #37]  AND GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT  [DOC. #31]

Before the court are the parties' cross-motions for summary judgment. The plaintiff, Robert Raymond, brings this action against the defendant, Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI"), asserting that his forced retirement upon turning sixty five violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-50 et seq. ("CFEPA"), and constituted a breach of contract.   Both parties filed a motion for summary judgment.  For the reasons hereinafter set forth, Raymond's motion for summary judgment is DENIED and BIPI's motion for summary judgment is GRANTED in part and DENIED in part.

## I.  Facts

The following facts on the record are undisputed unless noted otherwise. Raymond was born on October 29, 1939.  He is a lawyer with a Ph.D. in organic

1

chemistry who practiced intellectual property law, concentrating on pharmaceutical patents. BIPI is a pharmaceutical company with a center of operations in Ridgefield, Connecticut, and is a subsidiary of a German parent company. BIPI and its parent have affiliates in the United States and abroad.

On July 22, 1994, Raymond completed and signed a BIPI employment application that included the statement: "I understand that, if hired, my employment is 'at will' . . . . I further understand that this 'at will' employment relationship may not be changed except by written agreement signed by both the President or Vice President of Personnel at [BIPI] and me." [Doc. #34-1, Ex. 1] Raymond does not claim that his at will employment relationship changed. BIPI hired Raymond as its chief patent counsel, effective October 31, 1994, two days after his fifty-fifth birthday.

On his first day of work, Raymond countersigned BIPI's letter offering him employment. The letter read, in part: "This letter represents the total understanding regarding [BIPI]'s offer of conditions of employment. Your signature below acknowledges that this is the only statement that you have relied upon in making your decision." [Doc. #34-1, Ex. 2]

Raymond claims that during discussions with BIPI prior to reaching an employment agreement, he voiced concerns about available pension benefits, the number of years he would be required to work for those benefits to vest, and his ability to continue working for the company long enough to earn those benefits irrespective of his age. He further claims that, in response, BIPI employees

assured Raymond that BIPI had an anti-discrimination policy and that he would be able to work indefinitely so long as his job performance was positive. That alleged assurance was not reduced to writing.

On July 15, 1998, Raymond signed an acknowledgment of receipt of BIPI's employee guide of personnel policies. [Doc. #34-1, Ex. 3] The acknowledgment of receipt reiterated that Raymond was an at will employee. The employee guide did not include a mandatory retirement provision applicable to executives upon turning sixty five.

As BIPI's chief patent counsel, Raymond oversaw BIPI's entire patent law group and reported directly to BIPI's general counsel. The patent law group took the lead on securing patents for BIPI inventions and directing legal initiatives to protect those patents from infringement. Raymond advised other affiliates of BIPI's German parent on patent law. He collaborated with outside counsel on patent litigation matters. In around 2000, Raymond began reporting informally to the German parent's patent head.

On October 1, 2002, the month of his sixty third birthday, BIPI promoted Raymond to Vice President Intellectual Property. The promotion did not increase Raymond's duties or responsibilities. The promotion proposal submitted to the German parent's board of directors for approval stated that the chief patent counsel's workload had increased significantly in recent years, and the tile of Vice President would be commensurate with the position's duties and necessary for BIPI's succession plans. "It is expected that Dr. Raymond would hold this

title until his retirement in two years time.  Prior to that time, our succession plan calls for recruitment of an external candidate for this position.  Preliminary research indicates that, to be competitive, a vice president title will be required." [Doc. #40, Ex. 3]  Raymond claims he never saw the promotion proposal.

In early 2003, Raymond was asked to assist BIPI's search for his potential successor as vice president and chief patent counsel.  Raymond claims that he sought assurances from BIPI's general counsel, Ursula Bartels, that he was not being forced to retire.  He claims that Bartels responded that the attorney being hired constituted only a potential successor, and the search was nothing more than contingency planning.

On August 29, 2003, BIPI hired Michael Morris as an attorney in the patent group.  Raymond claims that Morris began usurping his professional and managerial duties immediately upon arrival; and that Raymond's direct reports began reporting to Morris instead of him.  In an April 12, 2004, email, Bartels referred to Morris as the "de facto head of the department."  [Doc. #40, Ex. 6] He claims that he was left with few professional responsibilities or managerial authority within his own department.

Morris claims that he did not formally assume any of Raymond's duties until after Raymond retired.  BIPI claims that several members of the patent law group continued reporting directly to Raymond until his retirement, that Raymond retained his role in hiring and firing members of the group, and that he continued to collaborate with outside counsel on patent litigation matters.  In 2004, twelve

separate subsidiaries of the German parent sought direction and advice from Raymond regarding their patents.

Raymond claims that he first hear of the existence of a mandatory retirement policy at BIPI in the Spring of 2004, from Bartels. He claims that he did not learn of the specifics of that policy until September 22, 2004, when he met with David Nurnberger, vice president human resources, to discuss his retirement. At that meeting, Nurnberger informed Raymond that BIPI had a mandatory retirement policy for executives upon reaching the age of sixty five.

Following the meeting, Raymond told Nurnberger that he believed that the company's age based retirement policy is illegal and provided copies of a court decision analyzing what Raymond believes to be a similar mandatory retirement policy for executives, Whittlesey v. Union Carbide Corp., 567 F. Supp. 1320 (S.D.N.Y. 1983). He checked BIPI's policy database and found no mandatory retirement policy. BIPI admits that its mandatory retirement policy had not yet been published at the time. On September 28, 2004, despite Raymond's objections based on the Whittlesey case, Nurnberger sent Raymond a letter confirming that as his sixty fifth birthday occurred in October 2004, Raymond's retirement would become effective October 31, 2004. [Doc. #34-1, Ex. 4] Raymond continued his objection to the mandatory retirement policy throughout October 2004. On October 29, 2004, Raymond turned sixty five. On October 31, 2004, he complied with BIPI's policy, retired, and began collecting pension benefits. On November 1, 2004, Morris succeeded Raymond as Vice President

Intellectual Property and chief patent counsel.  Sometime after Raymond retired, BIPI reduced its mandatory retirement policy to writing.  [Doc. #35-1, Ex. 11]  It claims that the written policy in its current form was the policy it applied to Raymond's retirement.

On August 31, 2006, Raymond initiated this lawsuit by filing a complaint claiming that BIPI's enforcement of its mandatory retirement policy:  1) violated the ADEA; 2) constituted a wilful violation fo the ADEA; 3) breached Raymond's employment contract; and 4) violated CFEPA.  [Doc. #1]  On December 27, 2007, BIPI moved for summary judgment on all counts.  [Doc. #31]  On December 31, 2007, Raymond filed a cross-motion for summary judgment on all counts.  [Doc. 37]

## II.  Standard

Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'"  Bouboulis v. Transp. Workers Union of Am., 442 F.3d 55, 59 (2d Cir. 2006) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party bears the burden of showing that no genuine issues exist

as to any material facts.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986).

If the moving party meets its burden, "an opposing party may not rely merely on

allegations or denials in its own pleading; rather, its response must - by affidavits

or as otherwise provided in this rule - set out specific facts showing a genuine

issue for trial."  Fed. R. Civ. P. 56(e).  "If the party moving for summary judgment

demonstrates the absence of any genuine issue as to all material facts, the

nonmoving party must, to defeat summary judgment, come forward with evidence

that would be sufficient to support a jury verdict in its favor."  Burt Rigid Box, Inc.

v. Travelers Prop. Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002).

      "The non-movant cannot escape summary judgment merely by vaguely

asserting the existence of some unspecified disputed material facts, or defeat the

motion through mere speculation or conjecture."  Western World Ins. Co. v. Stack

Oil, Inc., 922 F.2d 118, 121 (2d Cir.1990) (internal quotations and citations

omitted).  A party also may not rely on conclusory statements or unsupported

allegations that the evidence in support of the motion for summary judgment is

not credible.  Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

      The court "construe[s] the evidence in the light most favorable to the

non-moving party and . . . draw[s] all reasonable inferences in its favor."

Huminski v. Corsones, 396 F.3d 53, 69-70 (2d Cir. 2004).  "[I]f there is any

evidence in the record that could reasonably support a jury's verdict for the non-

moving party, summary judgment must be denied."  Am. Home Assurance Co. v.

Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006).

### III.  Discussion

### A.  ADEA and CFEPA[1]

The ADEA makes it "unlawful for an employer to . . . discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  There are statutory exceptions to this broad prohibition.  "Nothing in this Act shall be construed to prohibit compulsory retirement of any employee who has attained 65 years of age and who, for the 2-year period immediately before retirement, is employed in a bona fide executive or a high policymaking position, if such employee is entitled to an immediate nonforfeitable annual retirement benefit from a pension, profit-sharing savings, or deferred compensation plan, or any combination of such plans, of the employer of such employee, which equals, in the aggregate, at least $44,000."  29 U.S.C. § 631(c)(1).

Raymond relies on the <u>Whittlesey</u> court's interpretation of the bona fide executive and high policymaking position exceptions to the ADEA and the accompanying federal regulation, 29 C.F.R. § 1625.12, to argue that BIPI's application of its mandatory retirement policy did not fit within either exception.

---

[1]CFEPA claims are analyzed under the same legal standard and framework as ADEA claims, and Connecticut court's look to federal precedent when interpreting and enforcing CFEPA.  <u>See</u> <u>Levy v. Comm'n of Human Rights and Opportunities</u>, 236 Conn. 96, 103 (Conn. 1996).  The court's discussion of and findings on Raymond's ADEA claim are equally applicable to his CFEPA claim.  <u>See</u> <u>Farrar v. Town of Stratford</u>, 537 F. Supp. 2d 332, 348-49 (D. Conn. 2008).

BIPI takes great pain to distinguish <u>Whittlesey</u> from the factual circumstances surrounding Raymond's retirement, claiming he was in fact a bona fide executive and a high policymaking official.

The court finds <u>Whittlesey</u> to be on point in the manner that then District Judge Pierre Leval framed the dispute. <u>Whittlesey</u> involved the application of the bona fide executive and a high policymaking position exceptions to the chief labor counsel of a labor intensive company. Judge Leval explained:

> "The job of Chief Labor Counsel is one which might fall on either side of the exemption, depending on the functional role accorded to the position within the particular organization. It is possible to imagine a Chief Labor Counsel, particularly in a large labor intensive company, exercising important executive and policymaking responsibilities. This was the job which [the employer]'s witnesses sought to describe as Whittlesey's. It is also easily possible to imagine a Chief Labor Counsel who acts primarily as a lawyer, whose executive responsibilities are minor and who does not exert an impact on company policy, as envisioned by the statutory exemption. That was the job Whittlesey's testimony described."

<u>Whittlesey</u>, 567 F. supp at 1321.

In this case, BIPI portrays Raymond as exercising important executive and policymaking functions as chief patent counsel, as obtaining, protecting and enforcing its patents is critical to BIPI's success. In contrast, Raymond describes himself as little more than an in-house attorney. Furthermore, he claims that BIPI removed nearly all of his authority and duties nearly 18 months prior to his retirement. Even if he were a bona fide executive or high policymaking official in the past, he no longer was in the two years immediately prior to his retirement.

9

BIPI and Raymond fail to consider the procedural posture of <u>Whittlesey</u> when asserting their arguments. Judge Leval's <u>Whittlesey</u> decision followed a bench trial where the court acted as the factfinder. The court settled disputed issues of fact and sorted through the credibility and applicability of "characterizing testimony." <u>Id.</u> at 1322.

This case is before the court on cross-motions for summary judgment. It would be inappropriate for the court at this stage to settle disputed issues of fact or make credibility determinations. <u>See</u> Sec. II, above. In this case, resolution of the dispute over the applicability of the bona fide executive and high policymaking official exceptions to the ADEA requires the intervention of a factfinder.[2] Therefore, the cross-motions for summary judgment are DENIED.

### B. Willfulness

Under the ADEA, a plaintiff is entitled to liquidated damages in an amount equal to unpaid wages "only in cases of willful violations" of the statute. 29 U.S.C. § 626(b). "Well-established precedent recognizes that the willfulness necessary to support liquidated damages under the ADEA can be established either by proof that a defendant actually knew that his conduct violated federal law or by reckless disregard of that fact." <u>Cross v. N.Y. City Transit Auth.</u>, 417 F.3d 241, 252 (2d Cir. 2005).

---

[2]Raymond also argues that his annual retirement benefit does not meet the $44,000 required by 29 U.S.C. 631(c)(1) because a portion of it was termed "Excess Benefit." He cites to no legal authority to support such a reading. This argument is unavailing as the clear language of that statutory section requires only that the benefits "in the aggregate" equals $44,000.

Raymond produces no direct evidence to support his willfulness claim.  He does not allege that BIPI knew that its mandatory retirement policy was illegal prior to informing Raymond of the policy but disregarded that fact.  Nor does he allege that BIPI conducted due diligence that resulted in evidence that should have made it aware of the policy's illegality.  Raymond's wilfulness claim is based only on the fact that he disputed the legality of BIPI's policy as applied to him *after* the company had already decided he was subject to that policy.  He provided Nurnberger with a copy of <u>Wittlesey</u>, continued his protests based on his interpretation of the <u>Wittlesey</u> case until his retirement date, and eventually hired an attorney and filed this lawsuit.

The simple fact that Raymond finds BIPI's action unlawful is not sufficient to establish wilfulness.  As noted above, <u>Wittlesey</u> discusses the standard for applying the bonafide executive and high policymaking official exemptions to the ADEA, but is not clearly dispositive of this case.  In fact, that case illustrates the complex, nuanced and fact-driven character of the exemptions.  BIPI was aware at the time of Raymond's protests, as it is now, that Raymond was a Vice President in charge of the patent law group, a large, indispensable unit of the company.  Based on the record, like <u>Wittlesey</u>, Raymond's job could be perceived as falling on either side of the exemptions.  Raymond has not established that BIPI had no reasonable basis to believe that its policy was legal as applied to Raymond.  Moreover, BIPI asserts legitimate arguments in defense of its belief.  Simply because Raymond interprets <u>Wittlesey</u> differently than BIPI does not in

and of itself, make BIPI's conduct willful where its interpretation may be valid.

As discussed above, this is not a clear cut case. Even deciding all disputed issues of fact in favor of Raymond, there is simply is no evidence that BIPI knowingly or recklessly implemented an illegal retirement policy. Finally, the promotion proposal submitted to the German parent's board in support of Raymond's Vice President position stated that Raymond would be retiring at the time of his sixty fifth birthday. This shows that BIPI had some form of a mandatory retirement policy in place and had consciously applied it to Raymond more than two years prior to Raymond raising any objections to that policy.

This case presents nothing more than an employment dispute, with no evidence of wilfulness. BIPI's motion for summary judgment as to the wilfulness claim is GRANTED, and Raymond's motion for summary judgment as to that same claim is DENIED.

### C. Breach of Contract

"As a general rule, contracts of permanent employment, or for an indefinite term, are terminable at will" in Connecticut. <u>D'Ulisse-Cupo v. Board of Directors of Notre Dame High School</u>, 202 Conn. 206, 212 (Conn. 1987). Raymond asserts a claim for breach of contract. As there is unquestionably no express, written contract between the parties, the court assumes Raymond is pursuing a claim for breach of an implied contract. "A contract implied in fact, like an express contract, depends on actual agreement. . . . Accordingly, . . . the plaintiff ha[s] the burden of proving by a fair preponderance of the evidence that the defendant had

agreed, either by words or action or conduct, to undertake some form of actual contract commitment to him under which he could not be terminated without just cause." Reynolds v. Chrysler First Commer. Corp., 40 Conn. App. 725, 730 (Conn. App. Ct. 1996) (internal quotations and citations omitted); see also D'Ulisse-Cupo, 202 Conn. at 211, n. 2 (implied contracts require intent to bind).

Raymond's breach of contract claim can only survive summary judgment if he offers facts that could allow a reasonable jury to conclude BIPI agreed through either its words, actions, or conduct, to enter into some form of contractual agreement under which Raymond would not be terminated. Coelho v. Posi-Seal International, Inc., 208 Conn. 106, 112 (Conn. 1988). "A contractual promise cannot be created by plucking phrases out of context; there must be a meeting of the minds between the parties." Reynolds, 40 Conn. App. at. 730.

Raymond asserts that verbal statements made to him by BIPI employees created an implied contract whereby BIPI would not fire him on the basis of his age. In support, he cites to Finley v. Aetna Life & Casualty Co., 202 Conn. 190 (Conn. 1987), merely for the proposition that employment contracts can in some circumstances be created by oral statements. Not surprisingly, Raymond does not further pursue this argument in his opposition to BIPI's motion for summary judgment or in his reply brief in further support of his motion for summary judgment.

BIPI directs the court to three separate documents signed by Raymond that specifically state that he is an at will employee who may be discharged at any

time for any reason and that BIPI does not intend to enter into any form of contract with Raymond unless specifically put in a writing: Raymond's employment application; his offer letter; and his acknowledgment of receipt for BIPI's employee guide. Raymond does not contest that he read, understood the consequences of and signed each of these documents. In fact, due to his legal training and education, the court assumes he understood the ramifications of his reading and signing those documents more than the average employee.

There is a complete lack of evidence to support Raymond's half-hearted claim that BIPI intended to enter into an oral contract that he would not be fired on the basis of his age. In fact, there is strong evidence that both parties had an understanding that no contractual relationship existed. In light of this overwhelming evidence, Raymond's breach of contract claim must fail. <u>See</u> <u>Lowe</u> <u>v. Amerigas, Inc.</u>, 52 F. Supp. 2d 349, 356-56 (D. Conn. 1999). BIPI's motion for summary judgment as to the breach of contract claim is GRANTED, and Raymond's motion for summary judgment as to that same claim is DENIED.

## IV. Conclusion

Based on the above reasoning, Raymond's motion for summary judgment is DENIED and BIPI's motion for summary judgment is GRANTED in part and DENIED in part. Raymond failed to produce any evidence of a wilful violation of the ADEA by BIPI. He also produced no evidence that BIPI intended to enter into a contractual relationship with him. Summary judgment is granted to BIPI and the wilfulness and breach of contract claims are dismissed. There are disputed

issues of fact surrounding the executive or policymaking nature of Raymond's employment in the two years immediately preceding his retirement, preventing summary judgment for either party on his age discrimination claims.

A trial scheduling order shall issue forthwith.


IT IS SO ORDERED.


_____/s/_____

Vanessa L. Bryant
United States District Judge


Dated at Hartford, Connecticut:  August 21, 2008.